NEAS *v.* WHITENER-LONDON REALTY COMPANY.

Opinion delivered June 14, 1915.

1. DEEDS—DESCRIPTION—RANGE.—Lands were described in a deed of trust as sections 26 and 35 in township 12 north, without giving any range number; *held,* where there were lands in township 12 north, in several ranges, that therefore the description in the deed of trust was insufficient to convey the legal title to the lands attempted to be described.

2. VENDOR AND PURCHASER—MORTGAGED PROPERTY—INNOCENT PURCHASER —CONSTRUCTIVE NOTICE.—A. mortgaged certain lands to B., but omitted the range number, which was essential to a correct description, from the description in the mortgage; after B. had had the mortgage recorded, A. sold the lands to C., a *bona fide* pur-

chaser. *Held,* C. was not put on notice, constructive or otherwise, of the mortgage to B., in which the lands were defectively described.

Appeal from Mississippi Chancery Court, Osceola District; *Charles D. Frierson,* Chancellor; reversed.

*J. W. Rhodes, Jr.,* and *W. J. Lamb,* for appellants.

1. In this case the distinction between a deed and a mortgage or deed of trust is to be observed, in this: If one sells and conveys land by deed to another, and a third party, with knowledge of such sale, afterward buys the same land from the grantor in the first deed, he obtains no interest in the land, even though the deed was not recorded, but this is not true of a mortgage. A mortgage may be good between the parties, though not acknowledged or recorded, but it constitutes no lien upon the mortgaged property as against a stranger unless it is acknowledged and recorded, or, in this State, filed for record, and this is true even though the third party had actual notice of its existence. Kirby's Dig., § § 763, 5396; 9 Ark. 112; 20 Ark. 190; 18 Ark. 105; 49 Ark. 459; 68 Ark. 168; 25 Ark. 152; 41 Ark. 186; 56 Ark. 88.

2. A description which omits the range in which the land lies, and contains no other words of description by which the land sought to be conveyed can be identified, does not constitute, when filed or recorded, constructive notice of what land was intended to be conveyed. 41 Ark. 70; 43 Ark. 350; 54 Ark. 91; 35 Ark. 470, 477, 478, and cases cited; 30 Ark. 660; 3 Ark. 58; 51 N. E. 243; 41 N. E. 1054; 61 Pac. 820, 822; 33 So. 21, 22; 34 So. 602; 38 So. 957; 28 S. W. 551, 552; 24 S. W. 502; 34 N. W. 871; 46 N. Y. 384, 7 Am. Rep. 355; 51 Am. Dec. 769, 782, 783; 48 Ark. 419-425; 2 Devlin on Deeds (3 ed.), § 654; 20 Ia. 121, 89 Am. Dec. 517; 8 Vt. 172, 30 Am. Dec. 459; 110 Am. St. Rep. 924-932.

A mortgage can not be constructive notice of anything not contained in it; and the recording of this deed is constructive notice of that only which would become actual notice to one who read the deed or had actual knowledge of what it contained. Warvelle on Abstracts (3 ed.), § 62; 7 Cal. 292; 10 Vt. 555; 1 Johns Ch. 288.

*Hawthorne & Hawthorne,* for appellee.

The mortgage or deed of trust sufficiently describes the lands. They were in two townships in the same range, and the range number having been mentioned once, it would follow that all the lands were in the same range, unless they were described as being in a different range; but as a matter of precaution appellee asked for a reformation. 57 So. 836. If, however, the description as given was not in itself sufficient, there was at least enough there, when taken in connection with other facts appearing on the record, the deed from appellee to Lilly, and the timber deed from appellee to Chapman & Dewey Land Company, in both of which these same lands were correctly described, to put appellants upon inquiry, and a mere casual inquiry would have disclosed that the sections in question were in range 8 east. 87 Ark. 492; 108 Ark. 490; 50 Ark. 327; 35 Ark. 103; 70 Ark. 253; 2 N. E. 735; 54 Ark. 158; 51 Ark. 410; 52 Ark. 278; *Id.* 371; 111 Ark. 368; 46 Ark. 70.

If Neas was a purchaser for value without notice of appellees mortgage at the time he paid Lilly the $5,000 balance, he had constructive notice of the pendency of the suit of appellee and others to foreclose a vendor's lien and deed of trust in the United States District Court, which was filed, and a summons was issued and served on Lilly more than a month prior to the date this payment was made by Neas to Lilly. 25 Cyc. 1478; 134 Fed. 503.

SMITH, J. Appellee, Whitener-London Realty Company, hereinafter designated as the realty company, was the plaintiff below, and instituted this suit for the purpose of reforming and foreclosing a deed of trust executed in its favor by one O. R. Lilly. The realty company conveyed to Lilly on October 25, 1910, a large body of land, all of which was situated in township 13 north, range 8 east, Mississippi County, Arkansas, except two sections numbered 26 and 35, which were situated in township 12 north, range 8 east. This deed recited that it was subject to a timber contract theretofore made by the realty company with the Chapman & Dewey Lumber Company. The deed to Lilly recited that the consideration of $34,947 had been fully paid. On March 3, 1911, Lilly executed to W.

B. Flannigan, as trustee for the realty company, a deed of trust to secure notes aggregating the sum of $17,298.50, the balance due on the purchase price of the lands. This trust deed accurately described the lands lying in township 13 north, range 8 east, but described sections 26 and 35, as being in township 12 without giving any range number. Lilly was indebted to appellant D. H. Robinson in the sum of $6,000, and to secure the payment of this sum, which was evidenced by a promissory note for that amount, and which note was assigned to, and is now owned, by one J. W. Pumphrey, executed a deed of trust on said sections 26 and 35 in township 12 north, range 8 east. The date of this deed was April 12, 1911. Lilly later negotiated a trade with appellant Neas for the sale of section 35, township 12 north, range 8 east, for a consideration of $8,500, and executed a deed to Neas conveying said section of land on the 14th day of October, 1911. The deed of trust from Lilly in favor of the realty company was filed for record on the 23d day of March, 1911, while the deed to Lilly from the realty company was filed on the 14th of March, 1911, and all of the other conveyances herein mentioned were filed for record subsequent to those dates.

When Neas was negotiating with Lilly for the purchase of the section above described he procured an abstract of title to that section of land, which was made by a competent abstracter, and from the certificate of this abstracter it appears that the abstract purported to show all conveyances and liens of every kind affecting said land. There is some proof in the record to the effect that Robinson and Lilly were associated together in business, and that after taking a deed of trust in his favor on both sections 26 and 35 to secure the payment of the $6,000 due him from Lilly, Robinson thereafter, without any consideration, released his deed of trust insofar as section 35 was concerned. But it was shown that he considered Lilly as solvent, and he stated that he would have satisfied his deed of trust entirely had he been requested so to do. It is not necessary, however, to review the transactions be-

tween Lilly and Robinson, as the court below made no finding that Robinson was not an innocent purchaser except insofar as he was affected with constructive notice of the prior deed of trust from Lilly to Flannigan, as trustee.

The realty company filed suit in the Federal Court at Jonesboro on the 28th of March, 1912, in which it asked a reformation of the deed of trust to Flannigan by the insertion of the omitted range, and a foreclosure of that instrument; but this suit was never prosecuted to a final decree, and was dismissed on the 28th day of December, 1912. During the pendency of this suit in the Federal Court, Neas paid to Lilly the balance of the purchase money due on section 35, but Neas had not been made a party to this suit in the Federal Court, and had no actual knowledge of its existence.

The court below held that the registration of the deed of trust from Lilly to Flannigan was constructive notice of its existence, and that it constituted a lien prior to the subsequent conveyances. There is no circumstance in proof to support a finding that Neas was not a *bona fide* purchaser for value, and while there are some circumstances in proof which tend in a measure to show that Robinson may not have been, yet the chancellor did not make that finding of fact, nor is it now contended that the evidence is sufficient to establish that fact, but it is urged that both Robinson and Neas had such constructive notice of the Flannigan deed of trust that the conveyances to them must be held subject to that lien. The determination of the correctness of this view is, therefore, the question in the case.

Section 762 of Kirby's Digest provides that every instrument of writing affecting the title, in law or equity, to any real or personal property which is required by law to be acknowledged, or proved and recorded, shall be constructive notice to all persons from the time the same is filed for record in the office of the recorder of the proper county.

Section 763 of Kirby's Digest provides that no instrument of writing for the conveyance of any real estate, or by which the title thereto may be affected in law or

equity shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof; or against any creditor of the person executing such deed, bond or instrument, obtaining a judgment or decree, which by law may be a lien upon such real estate, unless such deed, bond or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and *ex-officio* recorder of the county where such real estate may be situated.

Section 5396 of Kirby's Digest provides that every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage.

(1) The description of sections 26 and 35 in the Flannigan deed of trust was insufficient to convey the legal title to those lands. It is shown without dispute that there were lands in township 12 north, in addition to those in range 8 east, there being townships numbered 12 north, 9 east; 12 north, 10 east; and 12 north, 11 east, and 12 north, 12 east. The designation of the range was, therefore, essential to a proper description of these sections.

In the case of *Howell* v. *Rye,* 35 Ark. 470 (to quote the syllabus), the court said:

"When a deed does not mention the township and range in which the land is situated, and no boundaries, natural or artificial objects, or other means for identifying the land, are given, on its face, is bad for uncertainty; and the grantor may make a new deed correcting the mistake and omission, which would be good between them."

To the same effect, see *Fuller* v. *Fellows,* 30 Ark. 657; *Mooney* v. *Cooledge,* 30 Ark. 640; *Doe* v. *Porter,* 3 Ark. 18; *Howell* v. *Rye,* 35 Ark. 470; *Cooper* v. *White,* 30 Ark. 513.

(2) Appellee concedes the insufficiency of the description when it prays that the same be reformed, and the court granted the prayer of that petition and decreed reformation of the deed by the insertion of the omitted

range. But appellee says that inasmuch as its deed of trust had been properly acknowledged and recorded, it thereupon became constructive notice to appellants and all others, not only of all recitals contained in it, but that its registry charged appellants and all others with the knowledge of all facts which would have been discovered by the inquiry which would have been suggested had they read the deed as recorded, that is, that this mortgage conveyed the same lands in township 13, range 8 east, which Lilly had purchased from the realty company when he purchased the two sections in township 12-8, and that as all the lands were conveyed to him by the same deed a perusal of this deed of trust would have suggested to him the necessity of inquiring whether or not the deed of trust was not in fact intended to convey the lands in township 12 north, range 8, as well as the lands in township 13 north, range 8. In effect appellees contend that the registry of the deed of trust was constructive notice of all its recitals and notice of all facts which could have been ascertained by the pursuit of the inquiry which its recitals would have suggested.

A somewhat similar contention was made in the case of *Bluff City Lumber Co.* v. *Bank of Clarksville,* 95 Ark. 1. In that case a deed of trust had been recorded which recited the dissolution of a partnership, and it was there contended that as all persons were charged with constructive notice of the instrument itself, they were likewise charged with the recitals contained in that instrument, and the trial court had been asked, but had refused, to give an instruction so declaring the law. Mr. Justice Battle, speaking for the court, said:

"The appellants contend that the trial court erred in refusing to so instruct; but it did not. The record of a deed is only constructive notice of that for which it is required. As it is not required to give notice of the dissolution of partnership, it does not subserve that purpose. Kirby's Digest, section 762."

It is said in the third edition of Warvelle on Abstracts, section 62, that "The doctrine of constructive notice under registration laws has always been regarded as

a harsh necessity, and the statutes which create it have always been subjected to a rigid construction.''

The case of *Stead* v. *Grosfield,* 34 N. W. 871, involved a question very similar to the one now under consideration. The syllabus in that case is as follows:

''On February 17, 1873, B., the owner of certain property, executed a mortgage, under the foreclosure of which the defendant claimed title. The property was vacant and unoccupied. This mortgage failed to mention the block in which the lot was located. On July 12, 1875, B. executed another mortgage upon the same property to the plaintiff, in which it was correctly described. The plaintiff was ignorant of the existence of the defendant's mortgage. *Held,* that the first mortgage and its foreclosure were void for uncertainty of description, and that plaintiff's title must prevail.''

In the case of *Laughlin* v. *Tips,* 28 S. W. 551, through the inaccuracy of the description employed, the question of the identity of the land conveyed was involved. But it was there contended that inasmuch as the first deed, which was of record, was intended to convey the tract of land in controversy, the subsequent purchaser stood charged with knowledge of that fact because the identity could have been known by investigation. But in disposing of this question, it was said:

''The deed does not, of itself, give notice that the tract of land sold by W. T. Lytle to appellant was the same sold by him to John T. Lytle and James Speed; and in order to make it effective, it became necessary to show that the two deeds conveyed the same tract, and that this was known to appellant at the time he purchased. Purchasers are only charged with constructive notice of the facts actually exhibited by the record, and not with such as might have been ascertained by such inquiries as an examination of the record might have induced a prudent man to make. *Taylor* v. *Harrison,* 47 Tex. 454. Registration is constructive notice only of what appears on the face of the deed, as registered. *McLouth* v. *Hurt,* 51 Tex. 115.''

A very similar question was under consideration by the Supreme Court of Mississippi in the case of *Simmons* v. *Hutchinson,* 33 So. 21, in which case that court said:

"Constructive notice arising from the record of a muniment of title is imputed to purchasers and creditors from a mere presumption of law, and it imputes only such knowledge as the instrument there recorded discloses, and not what a diligent inquiry into its meaning might disclose. The registration of an instrument is constructive notice to the world of the contents of the paper there recorded or intended to be recorded, and of its particular contents only, and it will have no operation or effect unless the original instrument correctly and sufficiently describes the premises which are to be affected. The effect of the registration law is to impute to a purchaser notice of what the instrument recorded or intended to be recorded actually conveys, and has no operation in the way of putting him upon inquiry as to what premises were intended to be conveyed, unless they be substantially described therein. 2 Pom. Eq. Jur., sections 653, 654."

In the case of *American Inv. Co.* v. *Coulter,* 61 Pac. 820, a mortgage had described a tract of land as being in range 17 when it was in fact in range 7, and the Supreme Court of Kansas held that the record of the mortgage itself which had an improper range, and, therefore, an imperfect description was not sufficient to charge subsequent grantees with constructive notice that the mortgage conveyed or was intended to convey the land in range 7.

An old case on this subject and one that is cited in all of the more recent cases is that of *Lally* v. *Holland,* 1 Swan (Tenn.) 396. In that case a court of chancery was asked to reform a deed of trust in which a mistake had been made as to the name of the bargainer, and as to that of the slave conveyed by the deed, and to enforce it as reformed against one who, subsequent to the execution of the deed, had purchased the slave without notice. In that case it was said:

"Again, registration is constructive notice in respect to such instruments only, as are authorized and required by law to be registered, and are duly registered in com-

pliance with law. 1 Story's Eq., section 404. And, furthermore, registration is constructive notice only, of what appears on the face of the deed as registered. 2 Humph. 116; 1 Johns. Ch. R. 299. If the registration be not authorized or required by law; or if the registry itself be not in compliance with the requirements of the law; or if, upon the face of the deed as registered, the property purporting to be conveyed, be not truly and properly described, the act of registration is treated as a mere nullity, and, of course, can not affect the subsequent purchaser with constructive notice. The object of registration is to give notice to creditors and subsequent purchasers. They have the right to presume that the instrument, as registered, speaks the truth, and expresses fully the true intention of the parties. They can not be expected or required to look beyond the face of the paper as it appears on the register's books; nor can they be charged with notice of anything beyond.''

A more recent case and one which reviews a great many authorities is that of *Bailey* v. *Galpin,* 41 N. W. 1054. In that case a deed had been recorded to a town lot which failed to state the block in which the lot was situated, and in that case, as here, it was contended that inasmuch as the deed had been recorded, that fact made it constructive notice to all subsequent purchasers of the property intended to be conveyed. Justice Vanderburgh, speaking for the Supreme Court of Minnesota, said:

"The legal title to land does not pass by deed unless so described that it can be identified or located by referring to or following out the description as given, and the effect of the record as constructive notice merely, can not be aided or supplemented by proof of the actual intentions of the parties to the deed, not disclosed by the record. *Tice* v. *Freeman,* 30 Minn. 391, 15 N. W. Rep. 674; *Parrett* v. *Shaubhut,* 5 Minn. 331. * * * But if the description in the deed is so defective and inaccurate that the subject of the grant is not properly identified or indicated, so that a reformation of the instrument is required, the legal title will not pass. *Roberts* v. *Grace,* 16 Minn. 134. Here the description is confessedly defective on its face. It is not

aided by the addition of particulars containing a correct description or identification, or pointing to it, as might be done, by reference to a previous deed or well known name or locality, or anything of the kind. * * *

"We come now to consider, in the next place, whether the record of the deed—there being no actual notice—was constructive notice to the plaintiffs of the equitable rights of the defendant, as between her and her grantors, to a reformation of the deed. But this could not well be; for, if the description in the deed is altogether insufficient to locate or identify the property and pass the title, it would not be constructive notice at all to the plaintiffs, and they were not bound to notice it or look for it. *Simmons* v. *Fuller,* 17 Minn. 490; *Roberts* v. *Grace,* 16 Minn. 135; Martind. Conv., section 276, *et seq.* It is intended that the record be a correct and sufficient source of information, and the statute did not mean to put purchasers upon further inquiry by virtue of its operation making the fact of registration constructive notice; and parties are understood to purchase upon the faith of the title as appearing of record. *Frost* v. *Beekman,* 1 Johns. Ch. 298; *Ledyard* v. *Butler,* 9 Paige 136; *Jackson* v. *How,* 19 Johns. 83; *Fort* v. *Burch,* 6 Barb. 74. It is the settled rule that registration is constructive notice only of what appears on the face of the deed, and of the description of the premises therein. And if upon the face of the deed as registered, the property in controversy is not so described as to identify it with reasonable certainty, the record can not be notice to subsequent *bona fide* purchasers. *Roberts* v. *Grace, supra,* 136; Will. Eq. Jur. *256. Under the registration laws, it is sometimes said in a loose and general way that the record of a deed is constructive notice to all the world, but this means simply that the record is open to all, and is notice to interested parties; and, strictly speaking, a purchaser has not by law constructive notice of all matters of record, but only of such as the title deeds of the estate show upon their face, or refer or direct him to. And the *bona fide* purchaser is not constructively bound to look further than the information afforded by the record of such deeds. The record of a deed is notice

only to those who are bound to search for it. *Dexter* v. *Harris,* 2 Mason, 536; *Maul* v. *Rider,* 59 Pa. St. 167; *Sanger* v. *Craigue,* 10 Vt. 555; *Thomson* v. *Wilcox,* 7 Lans. 376.

"The distinction between constructive and actual notice is also to be noticed. Constructive notice of the contents of a deed arises as an inference or presumption of law from the mere fact of record, and is in law equivalent to actual notice of what appears upon the face of the record to the party bound to search for it, whether he has seen or known of it or not; that is, constructive notice under the recording acts may bind the title, but does not bind the conscience; while actual notice binds the conscience of the party. *Underwood* v. *Courtown,* 2 Schoales & L. 66. Hence, where the attention of an interested party is directed to a defective deed, or the recorded copy thereof, he may get actual knowledge of the facts sufficient to affect his conscience, and put him upon inquiry, so as to charge him with notice, which would not otherwise be legally attributable to him from the record only. Thomas, Mortg., section 491. In this case it is only upon the assumption in advance that the plaintiffs knew in fact of the existence of the defendant's deed or the description therein, or were chargeable with notice by the record thereof, that it can be claimed that they were put upon inquiry, or that the title of these lots was bound by it. But they had no actual notice of it. The search made for them did not disclose it. The land was not known by such description. They were not put upon inquiry as to the particulars of the transaction, and they could not be constructively bound by a deed which did not describe the land, and inquiry of the parties to that deed did not become a duty, since they had no notice in fact. *Maul* v. *Rider,* 59 Pa. St. 167. As was said in *Barnard* v. *Campau,* 29 Mich. 163, 164, in general, it will not be disputed that one who seeks a benefit from the recording laws must incur all the risks of the failure to have his papers spread upon the record in proper form. An equitable construction can not be placed upon such laws, by which they may be made to give constructive notice of things the records

do not show. And in *Frost* v. *Beekman, supra,* 1 Johns, ch. 299, the chancellor says: 'The registry was intended to contain within itself all the knowledge of the deed necessary for the purchaser's safety.' The defendant was at fault in not seasonably examining and correcting the description in her deed; and where one of two innocent parties must suffer, the loss ought justly to fall on that one whose error has led to it. *Thomson* v. *Wilcox,* 7 Lans. 380.''

We have quoted extensively from that case, as it involves the question under consideration here, and the reasoning of the court is decisive of the point at issue, although we are not called upon to approve the statement that one seeking the benefit of the recording laws must incur all the risks of failure to have his papers spread upon the record in proper form, as we have held that one is required only to properly file his instrument for record. *Ghio* v. *Byrne,* 59 Ark. 280; *Case* v. *Hargadine,* 43 Ark. 144; *Oats* v. *Walls,* 28 Ark. 244. It would be unreasonable to extend the provisions of the registry laws so as to impose upon one who has only constructive notice, the duties resting upon one who has actual knowledge. Good faith requires of that man who has actual knowledge of any existing fact, to pursue such inquiry as would be suggested to an ordinarily prudent man by that knowledge, and equity charges him with the knowledge which he would have thus obtained had he made that inquiry. But we find no cases which impose this duty upon him who has only constructive notice. Constructive notice relates only to the instrument as recorded, and if the instrument is insufficient to give the necessary notice, then knowledge is not to be imputed. The deed of trust to Flannigan being one which requires reformation, its registry imputes no knowledge that range 8 had been omitted, and appellants having no actual knowledge of its existence are, therefore, innocent purchasers without notice, and the conveyances to them are superior to the Flannigan deed of trust.

The decree of the chancellor is therefore reversed and this cause will be remanded with directions to enter a decree in accordance with this opinion.